# COURT OF ERRORS AND APPEALS.

Enoch Doughty, appellant, and Nathaniel Doughty, respondent.

On a question of capacity, the mere expression of an opinion by a witness, not founded on any facts stated by him from which the court may judge of the soundness of the opinion express)d, if it be any evidence at all, is the lightest possible evidence.

That the complainant, before the making of the contract, had had a severe attack of illness, from which time he was a less active, enterprising business man than before; that he was a man of intemperate habits; that he was subject to occasional fits arising from the habit of intoxication; that his mind was less vigorous than when his habits were correct, does not show that he was deprived of his right reason or incapable of managing his affairs or business.

The bill stated that, at the time of the making of the partition sought to be avoided, the complainant was deprived of his right reason, and was of unsound mind and totally incaple of transacting any business or of the government of himself and management of his affairs, and stated what the partition was.

*Held,* that under this bill the court could not decree for the complainant and set aside the contract upon evidence of imbecility of mind and the ground that the partition was so unequal as, joined with the incapacity of the complainant, to raise a presumption of fraud in the defendant in procuring the deed of partition.

Under what circumstances the lapse of twelve years will be a ground on which a court of equity may refuse to interfere to set aside a partition deed alleged to have been obtained by the defendant from the complainant when he was of unsound mind.

For the facts of this case see *ante*, page 227.

*Wilson* and *P. D. Vroom* for the appellant.

*Jeffers* and *Browning* for the respondent.

The opinion of the court was delivered by the Chief Justice.

GREEN, C. J. The bill charges that on or about the 6th of February, 1819, the complainant and defendant entered into a general partnership in trade and business, including the buying and selling of real estate, dealing in lumber, wood and charcoal, building and sailing vessels, and farming ; that each partner put in an equal amount of capital, and were to share equal in profits and loss ; and that the partnership, as the complainant believes, continued down to the time of the filing of the bill of complaint, 2d December, 1851. That during the continuance of the partnership the partners became seized of divers tracts and parcels of real estate, and possessed of personal property of various kinds. That from the commencement of the partnership the defendant has been in the habit of applying the money and property of the partnership to his own private use, and had not kept full and regular accounts.

The bill further charges, that about the 1st of June, 1832, the complainant was taken sick, and continued so for a considerable time. That during the latter part of June, 1833, and the month of July following, the complainant was deprived of his right reason, and was of unsound mind and wholly incapable of the transaction of any business, or of the government of himself and management of his affairs, and that he continued in this position up to the 1st of January, 1834.

That on his restoration to reason in January, 1834, the complainant found to his surprise that the defendant had possessed himself of *all* the personal property of the partnership, and was informed by the defendant that he had executed a bill of sale to the defendant for all his interest in the personal property of the partnership, and also a deed for the complainant's interest in certain real estate of the firm particularly described in the bill. That the complainant never received any consideration for the conveyance of the real or personal estate, and that he continued to occupy the same, notwithstanding the conveyance of his in-interest, up to July, 1844, pursuant to the terms of the partnership.

1. The bill prays an *account* of the partnership transactions.

2. That the *deed* and *bill of sale* may be declared fraudulent and void.

3. An injunction to restrain the collection of the partnership debts, and the use by the defendant of the real estate.

4. A receiver to collect and receive the debts.

The answer admits the existence of a partnership prior to July, 1833, but alleges that on the 2d of July a dissolution of the partnership was agreed upon, and that on the 6th of July an instrument of dissolution, dated on the 2d, was executed. That on the 4th of July deeds were exchanged between the parties conveying part of the real estate to complainant and part to the defendant. That bills of sale for the vessels were made, and that the other personal property of the firm was taken by the different partners, and that both the real and personal estate have since been held in severalty. It expressly denies the insanity or incapacity of the complainant at the time of the execution of the papers, and all fraud in the transaction.

The issue made by the pleadings is whether, at the time of the transaction sought to be avoided, the complainant was deprived of his right reason ; whether he was of unsound mind, wholly incapable of the government of himself and the management of the affairs ; and whether the contract sought to be avoided was made with him while in that condition, fraudulently and without consideration. This is the case made by the bill and denied in the answer.

Upon this issue we think the complainant has signally failed in supporting his case. A number of witnesses do testify that in their opinion the complainant was incompetent for the transaction of business at and about the time of making the contract. It is, however, with few and slight exceptions, the mere expression of opinion, not founded upon any facts stated by the witness from which the court may judge of the soundness of the opinion expressed.

Now it is a well settled and most salutary rule, that upon a question of capacity the mere opinion of witnesses, if it be evidence at all, is the lightest possible evidence. The rule has been long established and repeatedly recognized.

The few facts stated and relied upon by the witnesses, in sup-

port of their opinions, are mainly such as may be satisfactorily accounted for by the delirium of fever or the madness of temporary intoxication. And this appears to be the view of his situation entertained by his family physician. He declares that the complainant was a sensible man, when well, and as capable of transacting business as ordinary men. His fits were caused by excess. It is clearly shown that in 1828 the complainant had a severe attack of illness, from which time he was a less active, enterprising, business man than before ; that he was a man of intemperate habits ; that he was subject to occasional fits, arising from his habits of intoxication ; that his mind was less vigorous than while his habits were correct. But all this does by no show that he was deprived of his right reason or incapable of managing his affairs and business.

If there were no evidence on the part of the defense, if the case stood upon the complainant's evidence alone, there is not evidence, in my judgment, upon which any jury would be justified in depriving him of the management of himself and his affairs.

But if the evidence on the part of the defendant is considered, no doubt can remain upon the question of the defendant's incompetency. It is shown, and not denied, that the making of the agreement and the execution of the contract extended through a period of at least five days, from the 2d to the 6th of July, inclusive. That on the 2d, the complainant went to the defendant's house in relation to the contract, and left part of his title papers there. That on the 4th of July he accompanied the defendant to the office of Mr. Canfield, (a public officer) a Collector of the U. S. revenue for the District of Great Egg Harbor, who drew the bills of sale of the vessels, and certified their execution and the execution of the deeds of the real estate ; thence to the commissioner for taking the acknowledgment and proof of deeds, where the deeds were acknowledged. On the 6th of July other instruments dissolving the partnership and completing the transactions were executed in the complainant's own house, in the presence of his family, and witnessed by a member of his family and a person in his employ. It is remarked, moreover, that on the 4th of July the defendant left his home in the pres-

ence of his family, with the knowledge of his wife, of persons in his employ, and several friends of the family then on a visit at his house. These circumstances would seem to show that at the time of the transaction he could not have been a lunatic or of unsound mind, in the judgment of his family or friends, or of the public officers who were cognizant of and participated in the transaction. It is further shown, on the part of the defendant, that during the year 1833 and during the very period when the bill alleges and the witnesses testify that the complainant was of unsound mind and incapable of managing his affairs, he attended to his ordinary affairs and business. He employed workmen, he superintended them, he discharged them, he settled with them; he bought; he sold; he erected houses. He did in fact all the business which his situation and business in life required him to attend to. Under such circumstances, to avoid solemn engagements on the ground of incapacity would be unwarranted and does not seem to be gravely insisted upon.

The case made by the evidence and relied upon in argument is that the partnership previously existing between the parties was dissolved in 1833, and that the partnership property was then divided between them. That the complainant was a man of weak mind, and that the partition was so unequal as, joined with the incapacity of complainant, to raise a presumption of fraud on the part of the defendant, and to require that the contract should be avoided.

Admitting the fact to be apparent that the division of the partnership property between the partners was unequal, is it competent for the court to give the relief asked for upon the frame of this bill?

The bill charges the continued existence of a partnership, and it is silent as to any dissolution or partition of the property. It sets up utter insanity, and alleges that the deeds were fraudulently obtained without consideration. The answer shows that the deeds were executed upon a dissolution of partnership in 1833, and pursuant to the terms of dissolution. It is now sought to avoid the deeds upon the ground that the inequality of the partition was so great as to raise a presumption of fraud on the part of the defendant. But this ground is not alluded to in the

bill. It is a ground which the defendant has had no opportunity to answer, and upon which no testimony has been taken. Under such circumstances, can a decree proceed upon this ground? It is not a mere technical or formal objection; but it affects materially and directly the substantial rights of the defendant. By the well settled principle of a court of equity, the complainant is entitled to the defendant's answer under oath to every material allegation of the bill. The defendant is equally entitled to the benefit of his answer upon every material point involved in the controversy. Now if this decree is sustained, it can be sustained only upon a ground upon which this defendant has had no opportunity of answering, or at least upon which he has never been called to answer. The bill, it must be remembered, charges that the partnership still existed; that no dissolution had taken place; that the deeds were utterly without consideration and while the defendant was deprived of his reason. The answer denies the insanity, avers that the partnership was dissolved, and that deed was executed pursuant to the terms of dissolution. Now this answer is pertinent, relevant and material. But would it have been either material or pertinent for the defendant by his answer to have gone further, set out the terms and conditions of the partnership and the *equity* of the dissolution? It would certainly have been justifying an act in no wise impeached, and might have created suspicion where none had existed. The radical objection to this decree upon the bill as framed is not that a total insanity is charged and a partial insanity proved, nor that a total want of consideration is charged and a partial one attempted to be shown. But the objection is, that the decree is made to rest upon a ground not alluded to in the bill, and upon which the defendant has had no opportunity of answering. Not only so, but it is a point upon which no testimony has been taken, and upon which, if the court act, they must act upon conjecture or surmise, and not upon a full or complete view of the situation of the parties, and the mere justice and merits of the case.

Admitting for the sake of the argument that this partition between the partners was unequal, it does not follow that it was utterly inequitable or unjust as between themselves. Admitting

the partnership to have been equal ; that as to the world they were the equal owners of all the partnership property, as well as of the real and of the personal estate ; if one of the partners have made large advances to the firm, he is to be paid before the partnership property is divided. The partnership property is only the clear estate after all the debts of the firm are paid. It is immaterial whether the debt is due to a partner or a stranger. And if one of the partners is largely in advance to the firm, or if the firm is largely in debt, and one partner, upon the dissolution, assumes the debts of the firm, such partner must necessarily take the largest portion of the partnership property, or the partition would neither be just nor equitable. Now it is unnecessary to assume that such circumstances did exist between these parties as to render an unequal partition of the property equitable and just, or to rely upon the improbabilities of each partner having advanced a dollar more than the other. It is enough to say that the court knows nothing judicially on the subject, and are not in a position to decide the question with safety or in accordance with the settled principle of equity. It is a question not raised by the bill, nor met by the answer, nor settled by the evidence. Upon this ground alone the party can not have the relief he seeks upon the frame of the present bill.

This objection applies to the form of the remedy. There is another objection fatal to the relief sought in whatever form the case may be presented.

The contract was made and the instruments sought to be avoided were executed in July, 1833. (The bill was filed in December, 1845.) In January, 1834, the complainant recovered (according to his own statement) the use of his reason. The bill was filed in December, 1845. During the period of nearly 12 years before the filing of the bill, the complainant was of sound mind. He had full knowledge of all the circumstances of the alleged fraud. There was no impediment, legal or otherwise to his seeking relief. He was not prevented by absence or poverty from maintaining his rights. Under such circumstances it should require the most cogent considerations to justify the delay and warrant a court of equity in lending its aid to the

complainant. The delay of the complainant might operate as a greater fraud than any imputed to the defendant.

But the objection to the relief sought does not rest upon the mere lapse of time. The complainant not only acquiesced in the claim of the defendant, but he did numerous acts unequivocally affirming the validity of the transaction. He took possession of all the personal property which, upon the dissolution, was assigned to him, and converted it to his own use. Two years after the conveyance he placed his deed upon record. He held the land conveyed to him in severalty, and treated it as his own. He had it surveyed; he cut off the timber; he erected buildings upon it; he received and appropriated the rents and profits; he sold and conveyed in fee a part of the land with covenants of general warranty, and with a recital that his title was derived from the defendant. These acts extend through a series of years, while the defendant was in his right mind. His exclusive title to the property grew out of the very transaction which he now seeks to set aside as fraudulent. Sound policy, the dictates of common justice, no less than the firm principles of equity, forbid that a man should be permitted to repudiate a contract which he has thus repeatedly affirmed.

Nothing, says the Chancellor, can call a court of equity into activity but conscience, good faith and a reasonable diligence. It is *not* conscientious for a party to stand by and permit his adversary to make permanent improvements on property to which *he* claims title. It is not *good faith* for a party to repudiate a contract the benefits of which he has availed himself of, and which by repeated acts he has unequivocally affirmed. It is not reasonable diligence for the party, when there is no disability and no impediments to the vindication of his rights, to lie passive for twelve years, and call upon a court of equity for its aid, when the lapse of time and his own laches may have deprived his adversary of the means of defense.

The decree of the Chancellor must be reversed and the complainant's bill dismissed with costs in the court below, but not in this court, and the record remitted to the Court of Chancery to be proceeded in accordingly.

In this opinion the whole court concurred.     Decree reversed.